# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

**RUSTIC RETREATS LOG HOMES,**
**INC. d/b/a Pioneer Log Homes**
**Midwest,**

        Plaintiff,

v.

        Case No. 19-CV-1614

**PIONEER LOG HOMES OF BRITISH**
**COLUMBIA, INC. and**

**PIONEER LOG HOMES OF BRITISH**
**COLUMBIA, LTD.,**

        Defendants.

## DECISION AND ORDER

On October 18, 2019, Rustic Retreats Log Homes, Inc. d/b/a Pioneer Log Homes Midwest ("Rustic Retreats") filed suit against Pioneer Log Homes of British Columbia Inc. and Pioneer Log Homes of British Columbia, Ltd. (collectively "Pioneer") for violation of the Wisconsin Fair Dealership Law ("WFDL"), breach of contract, and intentional interference with contract and prospective contractual relations. (Docket # 1-1.) Rustic Retreats' complaint alleged that Pioneer violated the WFDL by terminating its dealership with Rustic Retreats without good cause or adequate notice. (*Id.*) Rustic Retreats later filed a motion for a preliminary injunction on December 20, 2019. (Docket # 17.)

On June 22, 2020, I granted Rustic Retreats' motion for a preliminary injunction in part and ordered Pioneer to honor the parties' distributorship agreement pending trial. (Docket # 42 at 19.) Of particular note were Pioneer's obligations to provide Rustic Retreats

with wholesale pricing and promptly refer all potential sales or other leads to Rustic Retreats. (*Id.*) I also ordered Rustic Retreats to post a one-time security bond of $65,000.00 with the Clerk of Court. (*Id.* at 22.) Rustic Retreats' WFDL claim was ultimately dismissed on summary judgment. (Docket # 125.) Thereafter, I dissolved the preliminary injunction and ordered the Clerk of Court to hold the $65,000.00 in bond funds until further order of the Court. (Docket # 129.)

Presently before me are Pioneer's motion to recover damages on the injunction bond (Docket # 187) and Rustic Retreats' motion for contempt and sanctions (Docket # 50). For the reasons explained below, Pioneer's motion is denied and Rustic Retreats' motion is granted in part and denied in part.

## ANALYSIS

1. *Motion to Recover Damages on the Injunction Bond*

Under Federal Rule of Civil Procedure 65(c), the court may issue a preliminary injunction only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by a party that has been wrongfully enjoined. Rule 65(c) creates an "implicit presumption" in favor of awarding injunction damages to a defendant who has been wrongfully enjoined. *Coyne-Delany Co. v. Cap. Dev. Bd. of State of Ill.*, 717 F.2d 385, 392 (7th Cir. 1983). A wrongfully enjoined defendant must establish what damages were proximately caused by the injunction; while the damages cannot be speculative, the amount need not be proven mathematically. 11A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 2973 (3d ed. 2005). Furthermore, recovery is limited to the amount of the injunction bond. *Coyne-Delany*, 717 F.2d at 393–94.

A threshold question is whether Pioneer was wrongfully enjoined. The Seventh Circuit has not considered what constitutes wrongful enjoinment. However, several other courts of appeals have concluded that a party was "wrongfully enjoined" if it is determined that the enjoined party always had the right to do the enjoined act. *See Blumenthal v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 910 F.2d 1049, 1054 (2d Cir. 1990); *Nintendo of Am., Inc. v. Lewis Galoob Toys, Inc.*, 16 F.3d 1032, 1036 (9th Cir. 1994); *Glob. Naps, Inc. v. Verizon New England, Inc.*, 489 F.3d 13, 22 (1st Cir. 2007); *Nat'l Collegiate Athletic Ass'n v. Governor of New Jersey*, 939 F.3d 597, 603 (3d Cir. 2019). "The focus of the 'wrongfulness' inquiry is whether, in hindsight in light of the ultimate decision on the merits after a full hearing, the injunction should have issued in the first instance." *Blumenthal*, 910 F.2d at 1054.

Pioneer contends that it was wrongfully enjoined because Rustic Retreats sought a preliminary injunction against Pioneer pursuant to the WFDL, which I later determined was inapplicable to the parties' relationship. (Docket # 188 at 4.) Thus, Pioneer argues, the preliminary injunction prevented termination of the parties' distributorship agreement and hindered Pioneer's ability to appoint another distributor or make direct sales in Rustic Retreats' exclusive territory. (*Id.*) While Pioneer is correct that it prevailed on the WFDL claim, the parties disputed their respective rights and responsibilities under the distributorship agreement up until trial. The preliminary injunction preserved the status quo by ordering Pioneer to comply with all terms of the distributorship agreement for the pendency of the litigation. At the conclusion of a trial, however, a jury returned a verdict that *both* parties breached the distributorship agreement. (Docket # 154.) Because the jury found that Pioneer violated at least one provision of the parties' contract, there is no indication from the resolution of the merits that Pioneer was enjoined from doing something that it was always

3

entitled to do. As Pioneer was not wrongfully enjoined, the motion for recovery of damages on the injunction bond is denied.

    2.    *Motion for Contempt and Sanctions*

On January 7, 2021, Rustic Retreats filed a motion for contempt and sanctions accusing Pioneer of violating the preliminary injunction. (Docket # 50.) In the motion, Rustic Retreats argued that Pioneer violated the preliminary injunction by failing to promptly send sales leads and telling prospective customers that they could "deal directly" with Pioneer. (*Id.* at 2.) Rustic Retreats' evidence included identical emails from Pioneer's sales manager, Gary Crosina, to Eric and Deanne Jarema, Scott Lowell, and Kris Bates on September 23, 2020, informing them as follows: "Our Midwest representative does excellent work, but You are welcome to continue to deal directly with myself at the head office, there is no obligation for you to deal with an independent representative if you'd prefer not to." (Docket # 51-5 at 3–5.)

Rustic Retreats also complained that Pioneer failed to promptly send leads to Rustic Retreats, noting that 44 leads, dated from June 6, 2019 to August 21, 2020, were first produced to Rustic Retreats' counsel on September 24, 2020 (Docket # 51-1 at 1–44) and 8 leads dated from October 16, 2020 to December 13, 2020 were first produced to Rustic Retreats' counsel on December 16, 2020 (Docket # 51-2 at 1–8). Rustic Retreats also cited a December 15, 2020 email from Crosina to a potential customer, where Crosina responded to his questions about pricing for a home. (Docket # 52-3 at 1–2.) As relief, Rustic Retreats requested that Pioneer be ordered to pay the attorneys' fees and costs associated with its motions for a preliminary injunction and for contempt; that the bond be lifted and returned to Rustic Retreats; and that

4

Rustic Retreats pay compensation for the losses sustained as a result of Pioneer's contempt. (Docket # 50 at 3–4.)

In response to Rustic Retreats' motion, Pioneer places blame on Rustic Retreats for not actively pursuing the 52 sales leads at issue. (Docket # 53 at 1–2.) Pioneer also asserts that it complied with the preliminary injunction when it sent Rustic Retreats the two batches of leads on September 24, 2020 and December 16, 2020. (Docket # 53 at 2.)

"A court's civil contempt power rests in its inherent limited authority to enforce compliance with court orders and ensure judicial proceedings are conducted in an orderly manner." *Jones v. Lincoln Elec. Co.*, 188 F.3d 709, 737 (7th Cir. 1999). In order to hold a party in contempt, the court "must be able to point to a decree from the court which 'set[s] forth in specific detail an unequivocal command' which the party in contempt violated." *Ferrell v. Pierce*, 785 F.2d 1372, 1378 (7th Cir. 1986) (quoting *H.K. Porter Co. v. National Friction Products*, 568 F.2d 24, 27 (7th Cir. 1977)). "[S]anctions for civil contempt are designed to compel the contemnor into compliance with an existing court order or to compensate the complainant for losses sustained as a result of the contumacy." *Jones*, 188 F.3d at 738. A district court has "considerable latitude in how it goes about enforcing its own decrees in a contempt proceeding." *Rockwell Graphic Sys., Inc. v. DEV Indus., Inc.*, 91 F.3d 914, 920 (7th Cir. 1996).

The preliminary injunction unequivocally ordered Pioneer to comply with the terms of the distributorship agreement for the pendency of the litigation. Yet Pioneer told customers in Rustic Retreats' exclusive territory that they were not obligated to do business with Rustic Retreats and failed to promptly send Rustic Retreats leads. Thus, Pioneer was in contempt of the preliminary injunction. But Pioneer also points fingers at Rustic for failing to follow leads. The court enjoys broad discretion to fashion an appropriate remedy in a civil contempt

5

proceeding. *F.T.C. v. Trudeau*, 579 F.3d 754, 772 (7th Cir. 2009). In this case, the testimony that the jury received at trial well exposed the acrimonious conduct and resulting bad feelings between the parties that led to this litigation. Thus, it is unsurprising that such animosity persisted during the preliminary injunction period. Taking a cue from the jury, who determined that both parties breached their duties under the distributorship agreement and compensated them accordingly, I also assess that both sides contributed to the acrimonious conduct during the preliminary injunction period. Accordingly, I will deny Rustic Retreats' request for monetary sanctions and attorneys' fees for contempt.

## ORDER

**NOW, THEREFORE, IT IS HEREBY ORDERED** that the defendants' motion to recover damages on injunction bond (Docket # 187) is **DENIED**. The Clerk of Court is directed to release the bond amount to the plaintiff.

**IT IS FURTHER ORDERED** that the plaintiff's motion for contempt and for sanctions (Docket # 50) is **GRANTED IN PART AND DENIED IN PART**.

Dated at Milwaukee, Wisconsin this 18th day of April, 2022.

BY THE COURT:

_____
NANCY JOSEPH
United States Magistrate Judge